

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00113-CV

———————————————

IN RE NONA REED, Relator

---

Original Proceeding
Tarrant County, Texas

---

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

## I. Introduction

In this original proceeding, Relator Nona Reed seeks mandamus relief requiring that Real Party in Interest Burleson Independent School District officially recognize her candidacy for Place 1 on its Board of Trustees by placing her on the official ballot for the May 7, 2022 general election. Concluding that Reed failed to qualify as a candidate due to two errors on her timely filed application, the District, through a unanimous vote of the Board, including the incumbent Place 1 member, rejected her candidacy, certified the incumbent Place 1 and Place 2 members unopposed for reelection, declared them officially reelected, and canceled the May 7 general election. Because we agree with the Secretary of State's evaluation that Reed's timely filed application met all statutory criteria for ballot qualification, we hold that the District wrongfully excluded Reed from the May 7 ballot and thereby unlawfully certified the incumbent Place 1 member unopposed for reelection and declared him reelected without resort to the May 7 general election. Although it is too late to conduct the District's contested Place 1 general election as originally scheduled, given the District cannot legally declare the incumbent Place 1 member reelected under the circumstances, a vacancy will occur at the end of his current term, and Section 11.060(c) of the Texas Education Code provides for the remedy of a special election to fill the vacancy. *See* Tex. Educ. Code Ann. § 11.060(c). Accordingly, we grant the petition for writ of mandamus; we enjoin the District from certifying the

incumbent Place 1 member unopposed for reelection and declaring him reelected to a new term and further order the District to conduct a special election to fill the vacancy resulting from the inevitable expiration of the current Place 1 term at the earliest opportunity afforded by and in accordance with the relevant provisions of the Texas Election Code.

## II. Background

The District "lies partly in Tarrant County and partly in Johnson County." *Baker v. Brown*, 165 S.W.2d 522, 522 (Tex. App.—Fort Worth 1942, no writ). As the governing body of the District, the Board of Trustees consists of seven members, all of whom are elected at-large for three-year terms.[1] Each year, a general election for at least two places on the Board—three every third year—is conducted in May. This year's general election, scheduled for May 7, 2022, was to have been for Places 1 and 2.[2] Because the District covers portions of both Tarrant and Johnson Counties, general and special elections for the Board are conducted in and administered by both counties.

---

[1]We rely on information about the Burleson ISD Board of Trustees and their posted documents contained in the District's website and located at https://www.burlesonisd.net/domain/28. We may take judicial notice of information contained on a governmental website whether requested by a party or on our own motion. *See City of El Paso v. Fox*, 458 S.W.3d 66, 71–72 (Tex. App.—El Paso 2014, no pet.).

[2]The District asked us to take judicial notice of the election calendar, and we do so. *See* Tex. R. Evid. 201(c)(2).

Reed is a former teacher in the District. On February 18, 2022, she presented herself at the administration offices of the District in Johnson County to apply as a candidate for Place 1 on the Board. The District had given notice, through its own website, that applicants who wished to file applications in person should so appear and file between January 19 and February 18, 2022.[3]

Reed asked to speak to Lydia Smylie, the assistant elections administrator for the District. Smylie took Reed to her office and handed her the application packet to apply for a ballot position for the May 7 board election. The application itself was a form prescribed by the Secretary of State in September 2021 for use in a general election for a city, school district, or other political subdivision. At the top of the application, the form instructed that all information requested must be provided unless specifically identified as optional and that the failure to provide any required information may result in rejection of the application.

Reed completed the application and handed it (along with supporting documents) to Smylie, asking her if everything was filled in correctly. Smylie answered that she could not help Reed with anything. Reed replied that Smylie could help her if it was filled out incorrectly "but not to choose a seat to run." Smylie looked at the application, then administered the required oath. The oath contained Reed's name and

_____

[3]*See* document entitled 2022 Notice of Election Deadline to File for Place on Ballot, https://www.burlesonisd.net/Page/1242 (last visited May 3, 2022).

expressly stated that she was a candidate for the office of "School Board Trustee Pl. 1." Smylie accepted the application, and Reed left the administration offices.

A copy of Reed's completed and sworn application is reproduced below:

2-26
Prescribed by Secretary of State
Section 141.031, Chapters 143 and 144, Texas Election Code
09/2021

**APPLICATION FOR A PLACE ON THE BALLOT FOR A GENERAL ELECTION**
**FOR A CITY, SCHOOL DISTRICT OR OTHER POLITICAL SUBDIVISION**
ALL INFORMATION IS REQUIRED TO BE PROVIDED UNLESS INDICATED AS OPTIONAL Failure to provide required information may result in rejection of application

APPLICATION FOR A PLACE ON THE _Nona Reed_ GENERAL ELECTION BALLOT
(name of election)
TO: City Secretary/Secretary of Board
I request that my name be placed on the above-named official ballot as a candidate for the office indicated below.

OFFICE SOUGHT (Include any place number or other distinguishing number, if any.) _Place1_
INDICATE TERM: ✓ FULL ☐ UNEXPIRED

FULL NAME (First, Middle, Last) _Nona Cherćé Reed_
PRINT NAME AS YOU WANT IT TO APPEAR ON THE BALLOT* _Nona Reed_

PERMANENT RESIDENCE ADDRESS (Do not include a P.O. Box or Rural Route. If you do not have a residence address, describe location of residence.)

PUBLIC MAILING ADDRESS (Optional) (Address for which you receive campaign related correspondence, if available.) _327 NW TeenFro ST_

CITY _Burleson_ STATE _TX_ ZIP _76028_
CITY _Burleson_ STATE _TX_ ZIP _76028_

PUBLIC EMAIL ADDRESS (Optional) (Address for which you receive campaign related emails, if available.)
OCCUPATION (Do not leave blank) _Educator_
DATE OF BIRTH
VOTER REGISTRATION VUID NUMBER (Optional)

TELEPHONE CONTACT INFORMATION (Optional)
Home: Office: ✓ Same Cell: Same

FELONY CONVICTION STATUS (You MUST check one)
✓ I have not been finally convicted of a felony.
☐ I have been finally convicted of a felony, but I have been pardoned or otherwise released from the resulting disabilities of that felony conviction and I have provided proof of this fact with the submission of this application.

LENGTH OF CONTINUOUS RESIDENCE AS OF DATE THIS APPLICATION WAS SWORN
IN THE STATE OF TEXAS _49_ year(s) _____ month(s)
IN TERRITORY/DISTRICT/PRECINCT FROM WHICH THE OFFICE SOUGHT IS ELECTED _10_ year(s) _____ month(s)

*If using a nickname as part of your name to appear on the ballot, you are also signing and swearing to the following statements: I further swear that my nickname does not constitute a slogan or contain a title, nor does it indicate a political, economic, social, or religious view or affiliation. I have been commonly known by this nickname for at least three years prior to this election. Please review sections 52.031, 52.032 and 52.033 of the Texas Election Code regarding the rules for how names may be listed on the official ballot.

Before me, the undersigned authority, on this day personally appeared (name of candidate) _Nona Reed_, who being by me here and now duly sworn, upon oath says:
"I, (name of candidate) _Nona Reed_ of _Johnson_ County, Texas, being a candidate for the office of _School Board Trustee PL1_, swear that I will support and defend the Constitution and laws of the United States and of the State of Texas. I am a citizen of the United States eligible to hold such office under the constitution and laws of this state. I have not been determined by a final judgment of a court exercising probate jurisdiction to be totally mentally incapacitated or partially mentally incapacitated without the right to vote. I am aware of the nepotism law, Chapter 573, Government Code. I am aware that I must disclose any prior felony conviction, and if so convicted, must provide proof that I have been pardoned or otherwise released from the resulting disabilities of any such final felony conviction. I am aware that knowingly providing false information on the application regarding my possible felony conviction status constitutes a Class B misdemeanor. I further swear that the foregoing statements included in my application are in all things true and correct."

X _Nona Reed_
SIGNATURE OF CANDIDATE

Sworn to and subscribed before me this the _18_ day of _February_, _2022_, by _Nona Reed_
(day) (month) (year) (name of candidate)

_Lydia Smylie_
Signature of Officer Authorized to Administer Oath

_LYDIA SMYLIE_
Print Name of Officer Authorized to Administer Oath
ID# 133389322
My Commission Expires
October 01, 2023

_Asst. Elections Admin._
Title of Officer Authorized to Administer Oath

TO BE COMPLETED BY FILING OFFICER: THIS APPLICATION IS ACCOMPANIED BY THE REQUIRED FILING FEE (if Applicable) PAID BY:
☐ CASH ☐ CHECK ☐ MONEY ORDER ☐ CASHIERS CHECK OR ☐ PETITION IN LIEU OF A FILING FEE
This document and $_____ filing fee or a nominating petition of _____ pages received. ☐ Voter Registration Status Verified

_02 / 18 / 2022_ ___/___/___ (See Section 1.007)
Date Received        Date Accepted        Signature of Filing Officer or Designee

5

On February 23, 2022, Reed received a letter from an attorney representing the District. The attorney informed Reed that her ballot application had been rejected by the District due to two errors: (1) in a space meant to identify the "name of election," Reed wrote her own name; and (2) although she identified "Place 1" as the office sought and although the oath made clear she was "a candidate for the office of School Board Trustee Pl. 1," nowhere within the four corners of the application did she identify the District as the governmental body conducting the election. Because the application was filed on the final day that it could be accepted, the letter asserted that Reed would not have an opportunity to amend or otherwise refile her application. The letter also represented that the District was unable to exercise any discretion (though District officials admitted that they knew which school district was conducting the general election) because "[t]o do otherwise would violate Texas election laws."

Reed contacted the Secretary of State and asked that office to review her application to determine if it was legally sufficient. On March 18, 2022, Reed received a responsive email from Melanie Best of the Elections Division. In Best's opinion, identifying "Place 1" as the office sought was probably enough to comply with the law, especially because the oath further declared Reed to be "a candidate for the office of School Board Trustee Pl. 1." According to Best, it was obvious that filing the application with the District was "sufficient to indicate that this is an application for BISD." Further, concerning the title of the form, i.e., the "name of election" blank in

6

which Reed mistakenly wrote her name, Best said that it is merely for "administrative convenience" and not even required by the Election Code. Indeed, the Secretary of State's office has emphasized this fact in its recent training seminars, as evidenced by the following slide[4] specifically referenced by Best:

With the rejection of Reed's application, the only other candidate to file a timely application for Place 1 on the general election ballot was the incumbent seeking reelection.

---

[4]*See* Tex. Sec'y of State, *Candidate Applications*, https://www.sos.texas.gov/elections/forms/seminar/2021/33rd/candidate-applications-2021.pptx.

When a candidate for the school board is unopposed, the Election Code prescribes a means by which the board itself may declare the unopposed candidate elected without resort to a general election:

> The authority responsible for having the official ballot prepared shall certify in writing that a candidate is unopposed for election to an office if, were the election held, only the votes cast for that candidate in the election for that office may be counted. . . . The certification shall be delivered to the governing body of the political subdivision *as soon as possible* after the filing deadlines for placement on the ballot and list of write-in candidates.

Tex. Elec. Code Ann. § 2.052(a), (b) (emphasis added). Then, "[o]n receipt of the certification, the governing body of the political subdivision by order or ordinance shall declare each unopposed candidate elected to the office." *Id.* § 2.053(a). If such a declaration is made, "the election is not held." *Id.* § 2.053(b).

For example, when the candidates for Places 5, 6, and 7 were properly certified to be unopposed for the general election of May 1, 2021, the Board received and acted upon the certification from the District's elections administrator at a meeting conducted March 8, 2021, twenty-four days after the February 12, 2021 deadline for filing an application for a place on the ballot.[5]

In this case, the Board did not receive and act upon the elections administrator's certification that candidates for Places 1 and 2 were unopposed until a meeting conducted on March 28, 2022, thirty-eight days after the filing deadline.

---

[5] *See* 2021 Notice of Filing Deadline and 2021 Order of Cancellation, https://www.burlesonisd.net/Page/1242 (last visited May 3, 2022).

8

Indeed, the Board had canceled a meeting originally scheduled for the Monday after the Friday filing deadline but before Reed had received the letter notifying her of her application's rejection. And the March 28 meeting was the first opportunity for Reed and other interested constituents, including a member of the city council for the City of Burleson, to publicly address the Board concerning her application and to urge its members to adopt the Secretary of State's interpretation of its own form by reinstating her on the ballot.[6] The Board, with all members present and without comment, unanimously approved a motion to declare the incumbent Place 1 and Place 2 members reelected and ordered the cancellation of the May 7 election.

Reed filed her petition for writ of mandamus three days later, asking this court to compel the District to accept her ballot application.[7]

### III. Standard of Review

The duty to determine whether an application for a place on the ballot complies with constitutional and statutory requirements is ministerial in nature. *In re Bell*, No. 13-21-00439-CV, 2021 WL 5991046, at *1 (Tex. App.—Corpus Christi–Edinburg Dec. 17, 2021, orig. proceeding) (mem. op.). Sections of the Election Code dealing with candidacy for political office are mandatory and are to be strictly

---

[6]Video available at https://youtu.be/DuDJfX82ggA?list=PLEzoM98WAVX8zbeQxE4qUdku7ht4q5EcX (last visited May 3, 2022).

[7]The courts of appeals have jurisdiction to issue writs of mandamus "to compel the performance of any duty imposed by law in connection with the holding of an election." Tex. Elec. Code Ann. § 273.061(a). This court may consider Reed's petition because the District is "partly situated" in Tarrant County. *See id.* § 263.063(b)(2).

9

enforced and construed to further the legislature's intent to ensure uniform elections statewide, to reduce the likelihood of fraud, to protect ballot secrecy, to promote voter access, and to ensure all legally cast ballots are counted. Tex. Elec. Code Ann. §§ 1.0015, 1.003(a-1); *see In re Dominguez*, 621 S.W.3d 899, 904 (Tex. App.—El Paso 2021, orig. proceeding) (per curiam); *In re Walker*, 595 S.W.3d 841, 842–43 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) (per curiam). In candidate-eligibility cases, we are to strictly construe the applicable statutes in favor of eligibility. *In re Green Party of Tex.*, 630 S.W.3d 36, 39 (Tex. 2020) (orig. proceeding). Mandamus relief is available to compel the acceptance of a statutorily compliant application and the placement of that candidate's name on the ballot. *See In re Vela*, 399 S.W.3d 265, 266 (Tex. App.—San Antonio 2012, orig. proceeding); *In re Ducato*, 66 S.W.3d 558, 558 (Tex. App.—Fort Worth 2002, orig. proceeding).

## IV. Should Reed's Ballot Application Have Been Rejected?

The general requirements for ballot applications are contained in Section 141.031 of the Texas Election Code. *See* Tex. Elec. Code Ann. § 141.031. Of particular importance to Reed's situation, the statute mandates that an application must include "the office sought, including any place number or other distinguishing number." *Id.* § 141.031(4)(C). An oath is also required, containing the statement: "I, _____, of _____ County, Texas, being a candidate for the office of _____, swear

that I will support and defend the constitution and laws of the United States and of the State of Texas" *Id.* § 141.031(a)(4)(K).

The problem is determining what constitutes an identification of "the office sought." A related issue is whether we should view the ballot application requirements with some measure of common sense—in other words, is there enough contained in the application for a person of modest intelligence to, contextually, comprehend the information conveyed by the applicant? We believe that, in Reed's case, the "office sought" should have been clear to the elections administrator for the District.

To be sure, there is a line of authority holding that the ballot application statute is "mandatory" and that "strict compliance" with its terms is required. *See, e.g.*, *Wallace v. Howell*, 707 S.W.2d 876, 877 (Tex. 1986) (orig. proceeding) (holding statutory mandates should be strictly construed); *In re Gibson*, 960 S.W.2d 418, 421 (Tex. App.—Waco 1998, orig. proceeding) (same); *Escobar v. Sutherland*, 917 S.W.2d 399, 404 (Tex. App.—El Paso 1996, orig. proceeding) (same). But later decisions have emphasized the importance of candidate access and voter choice. *See In re Francis*, 186 S.W.3d 534, 542 (Tex. 2006) (orig. proceeding) ("As we have noted many times in recent years, provisions that restrict the right to hold office must be strictly construed against ineligibility."); *Davis v. Taylor*, 930 S.W.2d 581, 583 (Tex. 1996) (orig. proceeding) (construing laws "broadly in favor of eligibility of interest in access to the ballot"). Most recently, the Supreme Court of Texas has stated that the ballot access

statute should be interpreted "with a candidate's access to the ballot in mind." *Green Party of Tex.*, 630 S.W.3d at 39.

With this in mind, we see no contradiction between applying the ballot application mandates of Section 141.031 while simultaneously interpreting the law in a manner that favors the objective of greater ballot access. Here, no reasonable person—even one who is not in the position of the District's elections administrator—when reviewing Reed's application could have misunderstood what office she was seeking. First, it was unreasonable for the District to rely on Reed's misplacement of her own name in the "name of election" blank at the top of the application as a reason to reject the application. As the Secretary of State's training materials make clear, even leaving that blank empty is "not necessarily fatal."[8] Indeed, the District has not told us what mandatory statute Reed supposedly violated by mistakenly filling in that blank with her name. The name of the election is not the

---

[8]The District argues that we are not bound by the conclusions reached in the Secretary of State's email. We agree that we are not. But we are bound by the Election Code, and we do agree with the Secretary of State that the Election Code does not require the title of the form to be filled out in an error-free manner—or even at all. In any event, the Election Code mandates that the Secretary of State provide "a standardized training program and materials for county election officers." Tex. Elec. Code Ann. § 31.126(b). Further, we may take judicial notice of the training materials contained on the website of the Secretary of State. *See Avery v. LPP Mortgage, Ltd.*, No. 01-14-01007-CV, 2015 WL 6550774, at *3 (Tex. App.—Houston [1st Dist.] Oct. 29, 2015, no pet.) (mem. op.) (taking judicial notice of records and information contained on government website). Finally, although not binding, we find persuasive a reasoned interpretation of a statute by an official of the executive branch. *See T.L. v. Cook Children's Med. Ctr.*, 607 S.W.3d 9, 33 n.16 (Tex. App.—Fort Worth 2020, pet. denied), *cert. denied*, 141 S. Ct. 1069 (2021).

"office sought" mentioned in the Election Code. *See* Tex. Elec. Code Ann. § 141.031(a)(4)(C). And it is simply not conceivable that the District was fooled into thinking (as their attorneys have implied to Reed and to this court) that she was really applying to be on the ballot in the "Nona Reed" general election.

Second, and relatedly, the District implausibly insists that Section 141.031 required the rejection of Reed's application because its "four corners" never identified the political subdivision conducting the general election for which she sought ballot access and that the surrounding circumstances of Reed's in-person application could not be considered. Reed timely presented herself as a candidate in the administration offices *of the District*, as she was instructed to do by the notice of filing deadline published *by the District*.[9] She received, filled out, swore to, and filed her application at the administration offices *of the District* and in the presence of the assistant elections administrator *for the District*. She identified herself by office sought and took the oath as a candidate for Place 1, which was one of the only two places on the Board scheduled for the general election *by the District*. And the assistant elections administrator *for the District* notarized her oath as a candidate for that office. The idea that Reed went to all this trouble to file an application for a general election to be conducted for some other political subdivision is simply untenable.

---

[9] *See* 2022 Notice of Election Deadline to File for Place on Ballot, https://www.burlesonisd.net/Page/1242 (last visited May 3, 2022).

In so concluding, we find persuasive the common-sense approach of our sister court in El Paso in *Yapor v. McConnell*, 597 S.W.2d 555 (Tex. App.—El Paso 1980, orig. proceeding). In *Yapor*, the candidate filled out a ballot application but failed to fill in three blanks—his name, his county of residence, and the office he sought—on the statutorily required "loyalty affidavit." *Id.* at 556. The candidate properly executed the oath, however, and despite the omissions, the court held that the application conformed to the "requirements and intended purpose" of the statute because the information missing from the empty blanks could be gleaned from other parts of the application. *Id.* Accordingly, the court granted mandamus relief by ordering the candidate's name placed on the ballot. *Id.*

The District argues that *Yapor* is distinguishable because in that case the missing information was ascertainable from the application itself, whereas in Reed's situation, the District's identity as the political subdivision conducting the general election is missing entirely from Reed's application. We disagree, however, that Section 141.031 forecloses common-sense consideration of reasonable inferences from the circumstances surrounding the filing of an application. And the Supreme Court of Texas has rejected such an absolutist "four corners" approach.

For example, in *In re Barnett*, the supreme court considered a ballot application that omitted the candidate's address. 207 S.W.3d 326, 327 (Tex. 2006) (orig. proceeding). The supreme court held that such an omission was not fatal: the applicant's residence (specifically, his address in the single-member district for which

14

he wanted to run) could be ascertained by "confirming [his] residency based upon information in his application *and undisputed public records*." *Id.* at 328 (emphasis added). Not only may information from sources outside its "four corners" be utilized to complete an application but also the court clearly rejected such a per se exclusionary rule.[10]

Similarly, our sister court in San Antonio considered the ballot application of a candidate for Justice of the Peace, Precinct 4, Place 1; the application omitted "Place 1" as the office sought. *See In re Garcia*, No. 04-22-00016-CV, 2022 WL 130287, at *1 (Tex. App.—San Antonio Jan. 14, 2022, orig. proceeding) (mem. op.). The court found the evidence to be undisputed that "Place 2" had been recently abolished; accordingly, it would be irrational to assume confusion on the part of party officials construing the candidate's ballot application. *See id.* at *3. Place 2 simply did not exist anymore. *Id.* "[A] rejection of [relator's] application based on the omission of the Place 1 designation . . . both den[ies] her access to the ballot and silence[s] the voices of the voters who signed a petition in support of her place on the ballot." *Id.* at

---

[10]The *Barnett* opinion helpfully reprinted the candidate's ballot application in an appendix. 207 S.W.3d at 329. Interestingly, the candidate filled in the "office sought" blank in the same way as did Reed: writing only "Trustee 6" without identifying the Dallas Independent School District as the political subdivision or its Board of Trustees as the governing body. We note this not for its legal significance (that part of the application was not at issue in *Barnett*) but because of its *insignificance*. It underscores the fact that a reasonable elections administrator, when handed such an application, would react with common sense (as did the DISD official in *Barnett*) and presume that an applicant for a place on the school board who appeared before school district administration was seeking an office on that district's school board.

15

*4; *see also Francis*, 186 S.W.3d at 542 ("The public interest is best served when public offices are decided by fair and vigorous elections, not technicalities leading to default."); *In re Bell*, 91 S.W.3d 784, 788 (Tex. 2002) (orig. proceeding) ("We therefore conclude that omitting the signers' city of residence from [relator's] petition [did] not undermine the purpose behind the Election Code's 'residence address' requirement[] because there [was] enough other information to allow voting-eligibility verification for this particular election.").

In support of its "four corners" approach, the District relies on a subsequent decision of the El Paso Court of Appeals. *See In re Armendariz*, 245 S.W.3d 92, 95 (Tex. App.—El Paso 2008, orig. proceeding). In *Armendariz*, the candidate submitted an application and a petition, both of which indicated his desire to run for "Presidio County Commissioner Precinct #2." *Id.* at 93. Unfortunately, the office of County Commissioner Precinct 2 was not up for election, and nowhere in his application did he demonstrate any intent to run for the office that was the subject of the upcoming election—Presidio County Commissioner Precinct 1. *Id.* Although a reasonable inference existed from the surrounding circumstances that the candidate was simply mistaken in identifying the office sought and actually sought ballot access for Precinct 1, an equally reasonable inference existed that he truly sought ballot access for Precinct 2 but was mistaken as to when the office was subject to election. *See id.* Absent any means of identifying the mistake, the error was fatal. *See id.*

16

Here, there can be no such confusion. As noted above, the circumstances surrounding Reed's filing of her application admit of no other interpretation but that she sought ballot access for an office for which the District—and no other political subdivision—intended to conduct a general election. She received, filled out, swore to, and filed her application at the administration offices and in the presence of the assistant elections administrator for the District. And in notarizing her oath, the same assistant elections administrator confirmed that Reed sought ballot access for a place on a board of trustees that just happened to match one of the places subject to the upcoming May 7 general election, the administration of which was expressly included within her job title. In the letter rejecting Reed's application, even the District's own counsel admitted that District officials "considered accepting [Reed's] application, interpreting that [she had] intended to file in the Burleson ISD General Election based on all the circumstances, including the fact [that she had] submitted the application to Burleson ISD officials." Such an interpretation is the only reasonable one under the circumstances.

But the District chose to behave unreasonably, insisting that the ballot application process is really a "gotcha" trap, rather than one designed by the legislature to achieve a "just and reasonable result." *See Bell*, 91 S.W.3d at 785 (applying language of Code Construction Act to residence-disclosure sections of Election Code). In sum, no reasonable elections administrator for the District could have notarized Reed's oath declaring her candidacy for "the office of School Board

17

Trustee Pl. 1" under the surrounding circumstances and lawfully rejected her application. Accordingly, the District wrongfully rejected Reed's application and excluded her from the May 7 ballot and thereby unlawfully certified the incumbent Place 1 member unopposed for reelection, declared him officially reelected, and canceled the May 7 general election.

## V. Is There a Remedy?

The District argues that Reed has filed her petition for mandamus far too late to appear on the ballot for the May 7 election. We agree.[11] The time for mailing absentee ballots began on March 23:

> [T]he balloting materials for a voter who indicates on the application for a ballot to be voted by mail or the federal postcard application that the voter is eligible to vote early by mail as a consequence of the voter's being outside the United States shall be mailed on or before the later of the 45th day before election day or the seventh calendar day after the date the clerk receives the application.

Tex. Elec. Code Ann. § 86.004(b). And the law disfavors judicial interference with an election that is already in progress. *See Polk v. Davidson*, 196 S.W.2d 632, 634 (Tex. 1946) (orig. proceeding) (mooting appeal in ballot challenge when it would be "utterly impossible" to dispose of the case in time to print applicant's name on the ballot in time for absentee balloting to begin). Because the ballots for the May 7, 2022 election were due to be sent out before Reed's challenge to her ballot rejection—indeed, even before the Board received and acted on the certification of unopposed candidates by

---

[11]This particular mootness argument of the District is the only one with which we agree.

18

declaring their reelection and canceling the general election—this court is powerless to order her to be placed on the general election ballot. *See In re Crenshaw*, No. 05-17-00330-CV, 2017 WL 1292013, at *1 (Tex. App.—Dallas Apr. 7, 2017, orig. proceeding) (mem. op.) (declining to order city secretary to place relator's name on ballot when absentee balloting had already begun).

Even if the law allowed our intervention in this manner, there is no pending general election with which to interfere; the May 7 general election has been canceled. The District, without legal justification but relying solely upon its own determination that Reed's ballot application was irredeemably defective, simply has declared the "unopposed" incumbent candidate for Place 1 "reelected" and thereby rendered the May 7 general election unnecessary. *See* Tex. Elec. Code Ann. § 2.053(a), (b).

Nevertheless, Reed is not without a remedy. Section 273.081 of the Election Code authorizes "appropriate injunctive relief" for a person "who is being harmed or is in danger of being harmed by a violation or threatened violation of this code" in order "to prevent the violation from continuing or occurring." *See id.* § 273.081. Indeed, we are tasked—when exercising equitable powers to resolve Election Code violations—to "balance competing equities." *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) (orig. proceeding). This balancing must, by necessity in Reed's case, rely on some amount of creativity. Because the District's rejection of Reed's ballot application violated the ballot access provisions of the code and continues to unlawfully harm Reed by depriving her of the ballot access guaranteed thereby, we conclude that the

19

District's certification of the incumbent Place 1 candidate as unopposed, its declaration of his official reelection, and its cancellation of the May 7 general election are all actions subject to the injunctive relief contemplated by Section 273.081.

Moreover, under these unique circumstances, because the District failed to conduct a general election for the next term for Place 1 on the Board, the contemplated injunction will result in a vacancy at the end of its current term. *See Diaz v. Valadez*, 520 S.W.2d 458, 459–60 (Tex. App.—Corpus Christi–Edinburg 1975, no writ) (holding that school district's failure to elect a successor to board of trustees created vacancy subject to appointment pursuant to Education Code); *Clark v. Wornell*, 65 S.W.2d 350, 351 (Tex. App.—Waco 1933, no writ) (holding that rural school district's failure to elect a successor to an incumbent board member at the general election created a vacancy subject to appointment in accordance with statute); *Tom v. Klepper*, 172 S.W. 721, 723 (Tex. App.—El Paso 1915, writ ref'd) (holding that the failure to elect county commissioner at general election resulted in vacancy subject to statutory appointment). Section 11.060(c) of the Texas Education Code provides for the remedy of a special election to fill the vacancy. *See* Tex. Educ. Code Ann. § 11.060(c). Although the Education Code also empowers the Board to appoint someone to fill that vacancy, *see id.* § 11.060(a), (b), we are mindful that the Board's ability to fill Place 1 by appointment may merely perpetuate the injury already suffered by Reed and deprive her of the candidacy for which she legally qualified. Specifically,

20

the District ignored its constituents[12] and effectively "silence[d] the voices of the voters" by unlawfully stripping from Reed her right to appear on the ballot and canceling the May 7 election. *See Garcia*, 2022 WL 130287, at *4. Further, the District ignored the training from the Secretary of State's office[13] (referred to above)—training that clarifies the ballot application requirements of the Election Code and demonstrates that Reed's application complies with those requirements. We therefore have no confidence that the Board will not simply appoint the incumbent Place 1 member in a bid to achieve through quasi-legal means what the District attempted to do through its rejection of Reed's ballot application.

Accordingly, we enjoin the District from certifying the incumbent Place 1 candidate as unopposed for reelection and from declaring him reelected to a new term and further order the District to conduct a special election to fill the vacancy resulting therefrom upon the contemplated expiration of the current Place 1 term and at the earliest opportunity afforded by and in accordance with the relevant provisions of the

---

[12]Six members of the public (including Reed and a member of the City Council of the City of Burleson) stood up at the BISD Board of Trustees meeting on March 28, 2022, and urged the Board to hold the general election on May 7. Board of Trustees, Burleson ISD, Official Minutes of March 28, 2022, https://meetings.boardbook.org/Documents/CustomMinutesForMeeting/1384?meeting=518098.

[13]The first speaker at the Board meeting, in endorsing Reed's placement on the ballot and the non-cancellation of the May 7 election, specifically referred to this training and BISD's participation in it. *See* Video of March 28, 2022 BISD Board Meeting, https://youtu.be/DuDJfX82ggA?list=PLEzoM98WAVX8zbeQxE4qUdk u7ht4q5EcX (beginning at around 2:20).

21

Texas Election Code.[14] To effectuate this remedy, the applications of both Reed and the incumbent Place 1 candidate are ordered "grandfathered" as having already been filed for the special election unless expressly withdrawn in accordance with the Election Code. Finally, we observe that pursuant to Article XVI, Section 17 of the Texas Constitution, the incumbent Place 1 member will "hold over" in office until such time as the results of the special election produce a qualified successor for Place 1. *See* Tex. Const. art. XVI, § 17 ("[A]ll officers of this State shall continue to perform the duties of their offices until their successors shall be duly qualified."); *see Plains Common Consol. Sch. Dist. No. 1 of Yoakum Cnty. v. Hayhurst*, 122 S.W.2d 322, 326 (Tex. App.—Amarillo 1938, no writ) ("The purpose of the constitutional and statutory provisions requiring officers to hold over until their successors have qualified is to prevent vacancies in office and a consequent cessation of the functions of government. The constitutional provision is self-executing, and, like the similar provisions in the statutes, it is mandatory." (quoting 34 Tex. Jur. 370)); *Maddox v. York*, 54 S.W. 24, 25 (Tex. App.—Fort Worth 1899)[15] ("Only the failure to elect or

---

[14]We also reject the District's argument that the fifty-day deadline in Election Code Section 141.034(a) bars Reed from seeking relief. By its very terms, that deadline applies to challenges to an application, not legal action pursued against a political subdivision because of its *rejection* of an application. Tex. Elec. Code Ann. § 141.034(a); *see Escobar*, 917 S.W.2d at 410 ("[W]e conclude that [Section] 141.034 implicates a judicial challenge brought by a contestant.").

[15]Although not designated as such in the original West publication of the opinion, *Maddox* is an opinion from this court. *See Dobkins v. Reece*, 17 S.W.2d 81, 82

appoint a successor would entitle the incumbent to so remain in office, in order to perform its duties as enjoined in the constitution."), *aff'd*, 55 S.W. 1133 (Tex. 1900).

## VI. CONCLUSION

Having found that Nona Reed has been harmed by the District's unlawful rejection of her ballot application, we conditionally grant the petition for writ of mandamus. We enjoin the District from certifying the incumbent Place 1 candidate as unopposed for reelection and declaring him reelected to a new term and further order the District to conduct a special election to fill the vacancy resulting therefrom in accordance with this opinion. A writ will issue only if the District fails to comply with these directives.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: May 4, 2022

---

(Tex. App.—Fort Worth 1929, writ ref'd) (referring to *Maddox* as an opinion "by this court").